**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CV 16-8051-PCT-PGR (MHB) |
|        Plaintiff/Respondent, | CR 12-8088-PCT-PGR |
| v. | **REPORT AND RECOMMENDATION** |
| Shawn Lorin Henderson, | |
|        Defendant/Movant. | |

TO THE HONORABLE PAUL G. ROSENBLATT, UNITED STATES DISTRICT JUDGE:

Defendant/Movant Shawn Lorin Henderson, who is confined in the Federal Correctional Institution-Victorville I in Adelanto, California, has filed a pro se Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (CV 16-8051 ("CV") Doc. 1 and CR 12-8088 ("CR") Doc. 118.) Plaintiff United States of America (the "government") filed a Response, but Movant has not filed a Reply despite the Court having granted two extensions of time to do so. (CV Docs. 4, 7, 10.)

**BACKGROUND**[1]

On April 3-4, 2012, Defendant and Rowdy Lee Simcox, Sr., ("Simcox") drove a rental car containing two loaded handguns, ammunition, a ski mask, zip ties, a bullet proof vest, and pry bars. Law enforcement in Texas stopped their vehicle and found a loaded Glock .9 mm-caliber handgun, with an obliterated serial number, from a shaving kit located directly

---

[1] The following facts are derived from the government's response, exhibits and attachments submitted thereto, Movant's pleadings, as well as, the other documents set forth in this matter's civil and criminal record.

1   beneath Defendant's feet in the vehicle's passenger compartment. Police also recovered a

2   backpack containing a 17-round Glock magazine and .9 mm-caliber ammunition from the

3   back seat of the car in a backpack of the defendant. Police found another handgun, also with

4   its serial number obliterated, in the trunk of the car in Simcox's suitcase. (CR Doc. 87 at 1-2.)

5        Police officers traced both handguns to a January 5, 2012 burglary at Perfect Pawn

6   and Jewelry in Arizona, from which a total of 44 firearms were stolen. After his arrest, while

7   awaiting an interview, Defendant told a sheriff's deputy that the two handguns had been

8   located in a van located outside a house that ATF had raided in Arizona while investigating

9   the Perfect Pawn theft. Defendant added that he and Simcox were going to pick up $5 million

10  in drug money when they were stopped in Texas. (CR Doc. 87 at 1-2.)

11       On April 18, 2012, a grand jury returned a three-count indictment charging Simcox

12  and Defendant with Felon in Possession of Firearms and Ammunition (18 U.S.C. §§

13  922(g)(1) and 924(a)(2)), Possession of a Firearm with an Obliterated Serial Number (18

14  U.S.C. §§ 922(k) and 924(a)(1)(B)), and Possession of a Stolen Firearm (18 U.S.C. §§ 922(j)

15  and 924(a)(2)). (CR Doc. 1.)

16       On January 22, 2013, co-defendant Simcox pleaded guilty to Count One of an

17  Information (Theft from a Federal Firearm Licensee) and Count Three of the Indictment

18  (Possession of a Stolen Firearm). (CR Doc. 51; CR Doc. 110, RT 1/22/13 7.) In his plea

19  agreement, Simcox admitted that on January 5, 2012, he "and another person" had

20  burglarized a Federal Firearm Licensee in San Tan Valley, Arizona, and "stole 44 firearms,"

21  including a "Glock nine millimeter handgun" that "had been shipped in interstate

22  commerce." (CR Doc. 52 at 5; CR Doc. 110, RT 1/22/13 22-23.) Simcox further admitted

23  that on April 4, 2012, he was in Show Low, Arizona, and "traveling with another individual

24  in a car." (Id.) "[I]n the trunk of the car [he] possessed" that same stolen Glock .9 mm-caliber

25  handgun. (Id.)

26       Simcox's plea was public, and a copy of his plea agreement was entered onto the

27  publicly-available docket on January 22, 2013. (CR Docs. 51, 52.) The factual basis of

28  Simcox's plea is contained in the plea agreement. (CR Doc. 52.) Defendant's trial counsel

1   was notified of the entry of the plea, and a copy of the plea agreement was provided to all

2   parties on January 22, 2013. (CR Docs. 51, 52.) According to the record, Simcox's change

3   of plea proceeding occurred from 10:36 a.m. to 11:01 a.m. (CR Doc. 51; CV Doc. 4.)

4   Defendant and his counsel were present in the same courtroom before the same judge that

5   same morning for a pretrial conference. (CR Doc. 54; CV Doc. 4.) At the pretrial conference,

6   which began at 11:22 a.m., Defendant's counsel discussed Simcox's change of plea and used

7   the fact of the Simcox guilty plea as a basis to re-urge Defendant's motion to continue the

8   trial. (CR Doc. 54; CR Doc. 120, RT 1/22/13 2-4.)

9        A final pretrial conference was held on February 12, 2013, and the Court discussed

10   Simcox's guilty plea before Defendant and his counsel. (CR Doc.58; CV Doc. 100, RT

11   2/12/13 2.) Moreover, Defendant's counsel indicated her awareness of Simcox's plea

12   agreement when she discussed the facts of the case and potential defenses:

13        As I've indicated, Mr. Henderson very much believes that the evidence is
      lacking to put the firearm in his possession. This was not his vehicle. He was

14        the passenger in the vehicle. The firearms were clearly stolen by the driver,
      who has admitted responsibility for stealing those firearms and possessing

15        them. They were not found on Mr. Henderson's person, they were found in
      closed containers within the other individual's vehicle.

16   (CV Doc. 100, RT 2/12/13 9.)

17        Jury trial began on February 20, 2013. (CR Doc. 63.) In opening statements, defense

18   counsel put forth the defense theory that the firearms belonged to Simcox, that Defendant

19   was merely was along for the ride, and that the government could not prove that Defendant

20   knew that there were firearms in the car:

21        This wasn't Mr. Henderson's car. Mr. Henderson wasn't driving the car. And

22        he wasn't the one that stole the firearms. Mr. Simcox was actually the one
      responsible for all of that. Mr. Simcox in this case had the car rented by his

23        mother so he can drive it. Mr. Simcox was the one who was actually driving
      the car when it was stopped in Texas. And Mr. Simcox through the ATF

24        investigation turned out to be the one who stole the firearms that were found
      in the vehicle.

25
           I'm going to guess that several if not all of you have had an opportunity to

26        have a ride in a friend's car before. I don't know how many of you actually
      take the time to ask what in this car before you get inside of it. Whether you

27        ask for an inventory of the car, whether you do your own search of the car,
      going through suitcases and zippered bags and things like that.

28

(CR Doc. 101, RT 2/20/13 92.)

During trial, the government called the state trooper who made the initial stop and arrest of Simcox and Defendant in Texas. (CR Doc. 101, RT 2/20/13 99-176.) During the trooper's testimony, the government introduced and played a video of the road-side search of the car in which Simcox and Defendant were traveling. (CR Doc. 101, RT 2/20/13 107-118.) Simcox was driving and Defendant was sitting in the front passenger seat. (CR Doc. 101, RT 2/20/13 108.) The video showed the trooper removing the Glock firearm from the right-front passenger side of the vehicle, determining that the Glock was loaded, and placing the firearm on the top front of the car. (CR Doc. 101, RT 2/20/13 115-118.) The trooper also testified about a backpack that was in the rear seat of the car. (CR Doc. 101, RT 2/20/13 125-33.) The backpack contained a loaded clip for the Glock, along with loose .9 mm-caliber ammunition, a can of chewing tobacco and syringes (which matched chewing tobacco and a syringe found in the front passenger seat), an iPod, and clothes and shoes that were consistent with Defendant's size, and not Simcox's. (CR Doc. 101, RT 2/20/13 123-24, 125-33.) In the trunk of the car, the trooper found body armor, a duffle bag with clothes for a larger man, a tool box with pry bars, zip ties, and a Springfield Armory .9 mm-caliber handgun with ammunition. (CR Doc. 101, RT 2/20/13 133-37, 138-48.)

Defense counsel's cross examination of the trooper focused on the fact that Simcox was the driver, (CR Doc. 101, RT 2/20/13 150), that Defendant was "just along for the ride," (CR Doc. 101, RT 2/20/13 154), that the passenger floorboard was littered with sundry items while the driver's side floorboard was clean, (CR Doc. 101, RT 2/20/13 159), and that the Glock handgun was concealed in a zipped up shaving kit that was under the front passenger seat so as to not be visible, (CR Doc. 101, RT 2/20/13 160-61).

A deputy sheriff from Texas testified that while Defendant was in custody in Texas, Defendant saw an ATF agent from Arizona and commented that he recognized the agent because he was nearby when ATF agents raided the house to search for the stolen firearms. (CR Doc. 101, RT 2/20/13 178-80.) The deputy sheriff also testified that Defendant told him that Defendant and Simcox went to Texas to pick up $5 million in drug money. (CR Doc.

101, RT 2/20/13 180.) During cross examination of the deputy, defense counsel emphasized that Simcox and Defendant had communicated while in custody and that Defendant's statements could have come from information provided to Defendant by Simcox. (CR Doc. 101, RT 2/20/13 182-84.)

An ATF agent testified that an iPod was found in the backpack and that video recovered from that iPod appeared to be taken by Defendant and clearly contained recordings of Defendant's voice. (CR Doc. 102, RT 2/21/13 215-16.) The government introduced video of Defendant and Simcox at a Walmart in Arizona which showed Defendant and Simcox purchasing zip ties, gloves, and duct tape and Defendant paying for those items. (CR Doc. 102, RT 2/21/13 221-24.) Zip ties and gloves were found in a toolbox in the trunk of the car when it was searched in Texas. (CR Doc. 101, RT 2/20/13 136-137.) A three-foot prybar was also found loose in the trunk. (CR Doc. 101, RT 2/20/13 137.) Body armor matching Defendant's size was found in the trunk. (CR Doc. 101, RT 2/20/13 133-134.)

The agent also testified about the investigation of the theft of the firearms, that the two firearms recovered from the car in Texas had been stolen in Arizona, and that Defendant's statements to the deputy in Texas were consistent with the ATF raid on a house in Arizona during the investigation of the stolen firearms. (CR Doc. 102, RT 2/21/13 205, 227-228.) The agent also testified about how the firearms had defaced serial numbers but that law enforcement was able to restore the serial numbers in a laboratory. (CR Doc. 102, RT 2/21/13 200-201.)

During cross examination of the ATF agent, defense counsel elicited admissions that the agent had investigated the theft of the firearms for some period of time, that the agent had no knowledge of Defendant's presence when the house in Arizona was searched, and that his investigation led the agent "to the conclusion" that Simcox was "responsible for that theft." (CR Doc. 102, RT 2/21/13 230-31.) Defense counsel also got the agent to admit that he did not know whether the stolen guns had remained in Arizona between the theft on January 5, 2012, and the arrest of Defendant and Simcox on April 4, 2012. (CR Doc. 102, RT 2/21/13 231.)

1      At the close of evidence, defense counsel moved for a directed verdict. Notably, she

2 argued that the government had not met its burden regarding venue, i.e., to show that

3 Defendant had actually possessed either firearm while in Arizona. (CR Doc. 102, RT 2/21/13

4 256-58.) When the court denied the motion for directed verdict, defense counsel successfully

5 requested an instruction regarding venue so that she could re-urge her arguments to the jury.

6 (CR Doc. 102, RT 2/21/13 261.)

7      According to the record, defense counsel addressed two primary issues during closing

8 arguments. First, she alleged that the fact that a gun was found underneath the passenger seat

9 did not prove that Defendant possessed the firearm because there was testimony that

10 Simcox's possessions were found on the passenger-side floorboard. (CR Doc. 102, RT

11 2/21/13 290-91.) Second, she argued that the government had not proved venue because there

12 was no evidence that the firearms were present in Arizona. (CR Doc. 102, RT 2/21/13

13 297-98.) As to both points, defense counsel argued that the evidence was insufficient to show

14 that Defendant was aware of the presence of the firearms or ammunition and, therefore,

15 should not be found guilty of knowingly possessing them. (CR Doc. 102, RT 2/21/13 298.)

16      The jury returned a verdict of guilty on Count One (Unlawful Possession of a Firearm

17 or Ammunition) and a verdict of not guilty on Count Two (Transportation or Shipment of a

18 Firearm with an Obliterated or Altered Serial Number). (CR Doc. 66, 72.) The jury could not

19 reach a verdict on Count Three. (CR Doc. 66, 72.) Specifically as to Count 1, the jurors were

20 instructed as to unanimity, (CR Doc. 102, RT 2/21/13 326), and the jury found Defendant

21 guilty of possessing (i) "a Glock 9 mm handgun"; (ii) "one or more rounds of Tula

22 ammunition"; and (iii) "one or more rounds of Federal 9 mm ammunition." (CR Doc. 72.)

23 The jurors did not find Defendant guilty of possessing the Springfield Armory .9 mm-caliber

24 handgun or the Carbon .9 mm-caliber ammunition. (Id.)

25      On April 9, 2013, approximately six weeks after Defendant's trial, Simcox was

26 sentenced to 120 months in prison. (CR Doc. 79.) On June 25, 2013, Defendant was

27 sentenced to 110 months in prison. (CR Doc. 89.)

28

Defendant raised two issues on appeal:

> Issue One – Did the prosecutor present inconsistent theories as to whether it was Henderson or his co-defendant, Simcox, who possessed a Glock handgun and ammunition within the District of Arizona? If so, did this inconsistency amount to misconduct resulting in a violation of due process that denied Henderson a right to a fair trial? If a due process violation occurred, was this plain error? If so, Henderson's conviction and sentence should be vacated.

(CV Doc. 4, Appellant's Opening Brief at 7.)

> Issue Two – Did the district court err in denying Henderson's Motion to Dismiss Counsel in violation of his right to effective assistance of counsel and of his right to due process and a fair hearing? If so, his sentence should be vacated, the case remanded and new counsel appointed to represent him.

(Id. at 28.)

As to Issue One, Defendant argued that the prosecutor acted improperly in presenting inconsistent evidence as a result of a supposed conflict between the theory presented at trial (that Defendant possessed the Glock underneath the front passenger seat in Texas) and the factual basis of Simcox's plea agreement (that Simcox possessed the Glock in the trunk of the car while in Show Low, Arizona, several hours before). (Id. at 40-41). Defendant further argued that this conflict was particularly important in light of the venue issues presented in the case. (Id. at 46-48.)

The Ninth Circuit considered and rejected Defendant's arguments. See United States v. Henderson, 597 F.App'x. 412 (9th Cir. March 12, 2015) (unpublished). As to the alleged inconsistency between the Simcox plea agreement and the government's case at trial, the Ninth Circuit specifically found that there was no material inconsistency:

> The government did not act in bad faith or use false evidence when it argued that Henderson possessed the same handgun that his co-defendant admitted to possessing in the factual basis of his plea agreement; and, these were not fundamentally inconsistent theories.

Id.

In his § 2255 Motion, Movant alleges that "Counsel failed to investigate, interview, and call witness [whose] testimony was exculpatory in evidence, and [whose] testimony would have contradicted arresting officers testimony, not only constituted negligence, more over ineffective assistance of counsel." Movant alleges that if defense counsel had conducted

diligent "pre-trial investigation," then "she would have been aware of the co-defendant Simcox's plea agreement" in which the co-defendant "places the Glock Model 26 also in the trunk not at [Movant's] feet." Movant further alleges that if defense counsel had called co-defendant Simcox as a defense witness, this "without a doubt would have changed the outcome of the trial, and proved [Movant] did not knowingly possess the Glock Model 26 ... ." Movant concludes that this failure "cannot be called" strategic and, therefore, is "ineffective assistance of counsel that deprived [Movant] of his due process rights to a fair trial."

## DISCUSSION

In its Response, the government argues that Movant's ineffective assistance of counsel claim is meritless. Thus, the government contends that Movant's Motion to Vacate, Set Aside, or Correct Sentence be denied and dismissed with prejudice.

The two-prong test for establishing ineffective assistance of counsel was set forth by the Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  To prevail on an ineffective assistance claim, a convicted defendant must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  <u>See</u> <u>id.</u> at 687-88.

There is a strong presumption that counsel's conduct falls within the wide range of reasonable assistance. <u>See</u> <u>id.</u> at 689-90. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." <u>Id.</u> at 689. Review of counsel's performance is extremely limited. Acts or omissions that "might be considered sound trial strategy" do not constitute ineffective assistance of counsel. <u>Id.</u>

\\\

\\\

\\\

1    The prejudice component "focuses on the question whether counsel's deficient

2    performance renders the result of the trial unreliable or the proceeding fundamentally unfair."

3    Lockhart v. Fretwell, 506 U.S. 364, 372 (1993). In the context of an uncalled witness, a

4    petitioner must identify the witness, see United States v. Murray, 751 F.2d 1528, 1535 (9th

5    Cir. 1985), show that the particular witness was willing to testify, see United States v.

6    Harden, 846 F.2d 1229, 1231-32 (9th Cir. 1988), what the witness's testimony would have

7    been, see United States v. Berry, 814 F.2d 1406, 1409 (9th Cir. 1987), and that the testimony

8    would have been sufficient to create a reasonable doubt as to guilt, see Tinsley v. Borg, 895

9    F.2d 520, 532 (9th Cir. 1990). See also Dows v. Wood, 211 F.3d 480, 486-87 (9th Cir. 2000)

10   (finding the defendant did not establish IAC where there was no evidence, other than

11   "[Defendant's] self-serving affidavit," that alibi witness "would have provided helpful

12   testimony for the defense").

13   The court need not address both Strickland requirements if the petitioner makes an

14   insufficient showing on one. See Strickland, 466 U.S. at 697 (explaining that "[i]f it is easier

15   to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, ... that

16   course should be followed."); Rios v. Rocha, 299 F.3d 796, 805 (9th Cir. 2002) (stating that

17   "[f]ailure to satisfy either prong of the Strickland test obviates the need to consider the

18   other").

19   The Court finds that Movant has neither alleged nor provided any evidence to

20   demonstrate that Simcox would have testified, and that such testimony would have been

21   favorable. See Harden, 846 F.2d at 1231-32; Tinsley, 895 F.2d at 532. In Harden, the

22   defendant was convicted at trial of felon-in-possession of a firearm and claimed that his trial

23   counsel was ineffective for failing to call a co-defendant (Washington) who had claimed

24   ownership of the firearm and had pled guilty prior to Harden's trial. See Harden, 846 F.2d

25   at 1231-32. The Ninth Circuit rejected the claim for two reasons. First, Washington "pled

26   guilty and was awaiting sentencing at the time of Harden's trial. There is no evidence in the

27   record which establishes that Washington would testify in Harden's trial." Id. Second, the

28   decision not to call the co-defendant "appear[ed] to be a reasonable trial tactic" in light of the

1    co-defendant's criminal history and the fact that there were two guns involved in that case

2    and it was "counterintuitive to suggest that [the co-defendant] not only possessed the gun

3    under the car, but also the revolver in the car for which Harden had matching bullets." <u>Id.</u> at

4    1232.

5         Like <u>Harden</u>, Movant has not alleged or offered any evidence that Simcox was willing

6    to testify. Similarly, Movant has not offered any allegation or evidence that Simcox would

7    have provided testimony that was favorable to the defense. Rather, video evidence showed

8    a search of the car in which Simcox and Movant were traveling. Simcox was driving and

9    Movant was sitting in the front passenger seat. The video showed the trooper removing the

10   loaded Glock from the right-front passenger side of the vehicle. The state trooper also

11   testified about a backpack that was in the rear seat of the car containing a loaded clip for the

12   Glock, along with loose .9 mm-caliber ammunition, a can of chewing tobacco and syringes

13   (which matched chewing tobacco and a syringe found in the front passenger seat), an iPod,

14   and clothes and shoes that were consistent with Movant's size. Further, Simcox could have

15   testified faithfully to his plea agreement and stated that he had provided the firearm to

16   Movant days before the journey while they were in Arizona. He could have testified that

17   Movant knew of both firearms and that they had purchased the zip ties and gloves while in

18   Arizona in order to commit a drug robbery. Such testimony would have been consistent with

19   the evidence in the trial.

20        Moreover, during trial, defense counsel attempted to distance any prior association

21   with Simcox and establish that the gun had been placed under the seat without Movant's

22   knowledge, and that there was no evidence that Movant had been involved with Simcox in

23   the prior theft of the firearms. She further argued that the government had not established

24   venue. However, Simcox's complete statement in his plea agreement (that he "and another

25   person" had committed burglary, stolen a Glock and other firearms in Arizona, and that he

26   was traveling in Show Low "with another individual in the car" when he possessed the Glock

27   in the trunk), would have potentially undermined the theory of the defense by establishing

28

a relationship or association between Simcox and Movant, and that they likely acted in concert, in the minds of the jurors.

Thus, the Court finds that Movant has failed to demonstrate ineffective assistance of counsel. Movant is not entitled to any relief.

## CONCLUSION

Having determined that Movant's claim is meritless, the Court will recommend that Movant's Motion to Vacate, Set Aside, or Correct Sentence be denied and dismissed with prejudice.

**IT IS THEREFORE RECOMMENDED** that Movant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (CV Doc. 1 and CR Doc. 118) be **DENIED and DISMISSED WITH PREJUDICE**;

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because Petitioner has not made a substantial showing of the denial of a constitutional right.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. See 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure. Thereafter, the parties have fourteen days within which to file a response to the objections. Pursuant to Rule 7.2, Local Rules of Civil Procedure for the United States District Court for the District of Arizona, objections to the Report and Recommendation may not exceed seventeen (17) pages in length. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order

1    or judgment entered pursuant to the Magistrate Judge's recommendation. See Rule 72,

2    Federal Rules of Civil Procedure.

3         DATED this 14th day of December, 2016.

Michelle H. Burns
United States Magistrate Judge